IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LI MIN, et al. : CIVIL ACTION
:
v. :
:
CLARENCE MORRIS, et al. : NO. 09-0832

# MEMORANDUM

**L. Felipe Restrepo**
**United States Magistrate Judge**

At the Hearing held on July 26, 2010, Plaintiff confirmed that her claims are solely against the City of Philadelphia, as she was unable to serve Clarence Morris with the Complaint. Hr'g Tr. 3. Thus her claims against Mr. Morris for assault and battery, deprivation of her civil rights pursuant to § 1983, violation of the constitution of the Commonwealth of Pennsylvania, and conversion are hereby **DISMISSED**. See Compl. at 5-8 (Docket No. 1).

In her Complaint, Plaintiff makes claims against Defendants City of Philadelphia and Philadelphia Department of Public Health for deprivation of her civil rights pursuant to § 1983, violation of the constitution of the Commonwealth of Pennsylvania, and conversion, and alleges the City is liable for Clarence Morris's actions under the doctrine of respondeat superior. Id. at 6-8. At the Hearing, Plaintiff clarified that her theory of municipal liability pursuant to respondeat superior applies only to her claim of conversion. Hr'g Tr. 3-4.

Establishing liability for an alleged violation of his or her constitutional rights under Section 1983 requires a Plaintiff to prove that the defendants acted under color of state law and their actions deprived the plaintiff of a right secured by the Constitution. See Am. Mfrs. Mut.

1

Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). To establish municipal liability under Section 1983, a Plaintiff must prove that the municipality has a policy or custom, about which a policymaker is deliberately indifferent, that caused the violation at issue. See Monell v. Department of Social Services, 436 U.S. 658 (1978).

In its Motion for Summary Judgment (Docket No. 29, hereinafter "Def. Mot."), Defendant City of Philadelphia moves for dismissal of all claims against it. Def. Mot. at 9. Defendant first argues that Plaintiff cannot prove a violation of her civil rights under § 1983 because she cannot show that Clarence Morris was acting under the color of state law when he assaulted her. Id. at 12-14. Second, Defendant argues that Plaintiff cannot prove that there was a policy or custom of failing to properly hire or conduct background investigations of health inspectors, id. at 17-18, failing to supervise health inspectors, id. at 18-19, or failing to train and discipline health inspectors. Id. at 19-21. Defendant also argues that Plaintiff cannot prove deliberate indifference on the part of a policymaker and cannot establish that any policies or customs caused a violation of Plaintiff's constitutional rights. Id. at 21-23. Finally, Defendant argues that Plaintiff's claim under the Pennsylvania constitution is not one for which damages may be awarded, and that Plaintiff's conversion claim against the City is barred by the Political Subdivision Tort Claims Act. Id. at 23-25.

In her Response (Docket No. 31, hereinafter "Pl. Resp."), Plaintiff stipulates to the dismissal of her civil rights claims for Failure to Supervise Health Inspectors and Failure to Train or Discipline Health Inspectors, and of her claim for Violation of the Constitution of the Commonwealth of Pennsylvania. Pl. Resp. at 14, 17, 23. These claims are hereby **DISMISSED**. Plaintiff argues that Clarence Morris was acting under the color of state law because he would

not have had access to Plaintiff's restaurant absent the authority granted him as a Health Inspector, access which "predictably led to the stealing and assault." Id. at 3-8. Plaintiff further argues that she has adduced competent evidence that the City had policies or practices of failing to properly hire or conduct background investigations of health inspectors, of failing to supervise human resource associates, and of failing to train or discipline human resource associates. Id. at 11-19. Plaintiff argues she has adduced evidence of deliberate indifference on the part of a policymaker as to these customs or policies, id. at 19-21, and that she has adduced sufficient evidence to demonstrate at least a tenuous causal link between these policies and her harm such that the case should go to a jury. Id. at 21-23. As to her claim of conversion, Plaintiff argues that because the Political Subdivision Tort Claims Act only provides immunity for negligent acts, it does not bar liability for the intentional act of conversion. Id. at 23-25.

In its Reply (Docket No. 34, hereinafter "Def. Reply"), Defendant City argues that Plaintiff cannot satisfy Monell with a single hiring decision of a health inspector, that Plaintiff failed to establish a lack of supervision or training of Human Resource associates caused a constitutional violation, and that Clarence Morris was not acting under the color of law. Def. Reply at 1-5.

Summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(C)(2). "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party" and "a factual dispute is 'material' if it might affect the outcome of the case under governing law." Lieberman v. Marino, 2008 WL 4216150, at *2 (E.D. Pa. Sept. 15, 2008) (citing

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Summary judgment is appropriate if, after the parties have identified those parts of the record that demonstrate the presence of absence of a genuine issue of material fact, the non-moving party fails to identify facts "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

First, Defendant City asserts summary judgment should be granted because Clarence Morris did not act under the color of state law such that Plaintiff cannot validly assert a violation of her civil rights under § 1983. See Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982) (stating "there is no liability under § 1983 for those not acting under color of law."). While "[i]t is uncontested that Defendant Morris entered the Erie Express Restaurant on July 18, 2007, and used his health inspector's identification to gain access to the kitchen," Def. Mot. at 14, the parties dispute whether an individual who uses official credentials to access a space and then commits theft in that space and an assault upon leaving is "acting under the color of state law."

Defendant argues that Clarence Morris, in attacking Plaintiff after having accessed the restaurant kitchen with his authority as a health inspector, pursued purely private motives and his theft from and assault of Plaintiff were unconnected with his execution of official duties such that he did not act under the color of state law. Def. Mot. at 12-14 (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995) (determining that while a volunteer fire company was a state actor, a member of that company did not act "under color of state law" when he secretly set a fire that the company then put out)). Plaintiff responds that the fact of Clarence Morris's use of his authority to enter the premises is sufficient to consider him acting under the color of state law, Pl. Resp. at 3-8, notably that his wrongdoing was only made possible because

4

he was clothed in the authority of the state, and that at the time in question he purported to act in an official capacity or to exercise official responsibilities pursuant to state law. Id. (citing West v. Atkins, 487 U.S. 42, 49-50 (1988)). Defendant argues that "there is no evidence that Morris' position furthered his ability to commit assault" and that "it was clear to both parties that he wasn't acting pursuant to his position as a City employee." Def. Reply at 4-5.

Liability under Section 1983 "attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (finding that the NCAA did not act under the color of state law when it threatened UNLV with sanctions should it not discipline its basketball coach, as the actions taken as to that coach were all those of UNLV and not of the NCAA). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" Id. (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). However, "not all torts committed by state employees constitute state action, even if committed while on duty. For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law." Bonenberger v. Plymouth Tp., 132 F.3d 20, 24 (3d Cir. 1997). "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." Id. In Bonenberger, the Third Circuit noted that if a state entity places an official in a position from which that official can issue orders to an individual who had to obey the orders or face potential formal reprisal – in the case of Bonenberger, insubordination – that official acts under the color of state law. Id. at

24-25.

Here, it is undisputed that Clarence Morris used his authority as a health inspector to have the employees of Erie Express Restaurant leave the kitchen so that he could examine the premises. Having used his authority in his manner, Morris then stole $1,200 from the restaurant's kitchen and assaulted Plaintiff while escaping with the stolen money. Clarence Morris could not have committed his apparent "personal goal" of stealing the money absent his assertion of state authority, and thus he acted under the color of state law when committing the theft in the restaurant. See Bonenberger, 132 F.3d at 24-25.

It is substantially less clear that authority granted Clarence Morris by the state facilitated his commission of assault. Under the facts presented by the parties, Morris had the stolen cash visible in his pocket and this prompted Plaintiff to try and get the money back. Def. Stat. Uncontested Facts, ¶ 1.6. Were the money not visible, it is possible that Plaintiff would not have sought to stop Morris, and thus the altercation might not have ensued. As such, it is unclear from the facts alleged by the parties whether Clarence Morris appeared to be asserting state authority at the time he assaulted Plaintiff. Thus, a jury would have to decide whether Morris was acting in his personal or official capacity when he assaulted Plaintiff. See Errico v. Township of Howell, 2008 WL 2559355, at *3-4 (D.N.J. June 26, 2008). However, as discussed below, Plaintiff's theories of liability as to customs of improper hiring, of failing to supervise, and of failing to train cannot survive summary judgment, rendering moot the issue of whether Morris was a state actor.

Defendant City's second argument is that summary judgment should be granted because even if Plaintiff could establish that Clarence Morris acted pursuant to state authority, she has not

adduced competent evidence to establish the elements of municipal liability as outlined in Monell and its progeny. As previously mentioned, to establish liability on the part of a municipality for constitutional harms, Plaintiff must prove that the municipality has a policy or custom, either promulgated by a department or about which a policymaker is deliberately indifferent, that caused the violation at issue. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Defendant City argues that Plaintiff has not adduced competent evidence of a City policy or custom of failing to train, supervise, discipline, or properly hire/conduct background investigations of health inspectors. Def. Mot. at 15-21. Defendant further argues that Plaintiff has not adduced competent evidence of deliberate indifference on the part of a policymaker or that any such policy or custom to which a policymaker may have been indifferent was the proximate cause of Plaintiff's harm. Id. at 21-23. As such, Defendant argues that Plaintiff's claim fails as a matter of law.

In her Response in Opposition, Plaintiff clarifies her three theories of municipal customs that she alleges were the moving force behind the violation of her constitutional rights, argues that she has identified a policymaker sufficiently for the purposes of surviving summary judgment as to municipal liability, and argues that summary judgment should not be granted on any of her municipal liability claims. Plaintiff argues the City should be held liable for the alleged violation of her civil rights because the City had a policy or custom of, together or in the alternative, failing to hire health inspectors properly, failing to train or discipline human resource associates, and failing to supervise human resource associates. Because discrete bodies of law have developed around each of these three alleged theories of liability – a failure to hire health department employees properly, a failure to supervise human resource associates, and a failure to

7

train human resource associates – and the elements required to prove each of them, they are addressed separately below.

Plaintiff asserts in her first section subtitle that she has adduced competent evidence of a City policy or custom of failing to properly hire or conduct proper background investigations of health inspectors, Pl. Resp. at 11, but then in the body of her argument focuses on the general hiring practices of the City Health Department, arguing that she has adduced competent evidence of several instances in which the Health Department failed to follow internal Directive 06-02, which mandates against the hiring of individuals with criminal records. Id. at 11-14.[1] Plaintiff has adduced competent evidence that the Health Department, and specifically Andrea Gaskins-Battle, hired several individuals with criminal records. Id. Plaintiff argues that this failure to heed Directive 06-02 constitutes a Departmental custom that, at least in part, led to her injury. Id.[2]

As Plaintiff acknowledges, to sustain a claim for liability as to the identified custom of improper hiring, she "must show that 'policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [her] injury.' Bielevicz, [915 F.2d] at 851." Id. at 11. In Bielevicz v. Dubinon, Plaintiffs survived summary judgment where the record in the case "contain[ed] facts from which

---

[1] As examples of prior failures, Plaintiff identifies the hiring of two individuals with criminal backgrounds for custodial positions by Ms. Gaskins-Battle, as well as the hiring of Donald A. Hannon by another individual. Pl. Resp. at 11-14. Of these individuals, the only one hired as a health inspector was Clarence Morris.

[2] Phrased as a policy or custom of failing to hire health inspectors properly, Plaintiff's claim must fail as she has adduced no evidence that more than one health inspector with a criminal record was hired by the Health Department. See Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997).

8

a jury could reasonably infer that policymakers knew that the charge of public drunkenness was used to incarcerate individuals who were not intoxicated, yet failed to take affirmative steps to remedy this problem." 915 F.2d 845, 854 (3d Cir. 1990). While the "similar unlawful conduct" of which supervisors were aware and indifferent to at issue in Bielevicz was the incarceration of individuals based on an invented charge, the conduct/custom alleged by Plaintiff is the routine violation of an internal directive that precludes the hiring of individuals with criminal records. See Pl. Resp at 11-14; see also Departmental Directive No. 06-02, attached as "Exhibit 6" to Pl. Resp. While Plaintiff has adduced competent evidence of several instances in which the Health Department hired individuals with criminal records, Plaintiff has adduced no evidence that a failure to adhere to an internal hiring policy constitutes "unlawful conduct" or that a constitutional harm is the obvious consequence of a failure to adhere to the internal hiring policy. See Bieleviz, 915 F.2d at 851, 854; Peltzer v. City of Philadelphia, 656 F. Supp. 2d 517, 532-33 (E.D. Pa. 2009) (in a situation where the "alleged custom is not itself unconstitutional," denying summary judgment where a jury could find the City was deliberately indifferent to an obvious consequence of its policies). As Plaintiff has failed to adduce any evidence from which a jury could conclude that the Health Department's hiring practices constitute "unlawful conduct" or that a theft and/or assault is an "obvious consequence" of hiring an individual with a criminal record, Defendant City's Motion for Summary Judgment is **GRANTED** as to this theory of liability.[3]

---

[3]Because there is insufficient evidence from which a jury could conclude the alleged hiring practices of the Defendant constitute unlawful conduct or that a theft or assault is an obvious consequence of these alleged hiring practices, we decline to address whether Plaintiff has sufficiently identified a municipal policymaker whose alleged deliberate indifference could trigger municipal liability.

Plaintiff's second argument is that the City can be found liable under a theory that it had a custom of failing to supervise Human Resource Associates in the Health Department. Pl. Resp. at 14. Establishing a supervisory liability claim requires the Plaintiff to "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) for the elements of a supervisory liability claim). Plaintiff argues that she has adduced competent evidence that Ms. Gaskins-Battle should have removed individuals with a criminal history from the hiring pool; that Ms. Gaskins-Battle's supervisors, knowing that she was incapable of removing a candidate with a criminal history, did not ensure that she would in fact remove such individuals; and that this failure resulted in Plaintiff's harm. Id. at 14-17.

As detailed, Plaintiff has adduced competent evidence from which a jury could find that Gaskins-Battle's supervisors knew there was an unreasonable risk that Gaskins-Battle would hire individuals with criminal records. However, Plaintiff has adduced no evidence that Gaskins-Battle's hiring practice of failing to remove individuals with criminal records "created an unreasonable risk of the ultimate injury." See Sample, 885 F.2d at 1118 (emphasis added) (stating "[n]ormally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions."). Unable to identify another instance in which an individual with a criminal record hired by the Health Department

10

allegedly then violated the civil rights of a citizen, Plaintiff relies instead on mere conjecture, stating "[i]t is entirely logical that hiring convicted criminals as Health Inspectors will undoubtedly lead to instances of criminality such as theft and assault." Pl. Resp. at 17. The mere hiring of an individual with a criminal record does not harm Plaintiff's constitutional rights, and Plaintiff has not adduced "evidence that [a constitutional violation] has in fact occurred on numerous occasions" such that the City can be found liable for a failure to supervise under Section 1983. See Sample, 885 F.2d at 1118. Consequently, Defendant City's Motion for Summary Judgment as to this theory of municipal liability is **GRANTED**.

Plaintiff's third argument is that the City can be found liable under a theory that it had a custom of failing to train or discipline Human Resource Associates in the Health Department. Pl. Resp. at 17. Plaintiff responds that she has adduced competent evidence that Gaskins-Battle's managers knew she had previously hired two individuals with criminal backgrounds but did not do anything to discipline her for violating Directive 06-02, which mandates that individuals with criminal histories not be hired, or to ensure that she was trained on that Directive. Id. at 17-19. "Where . . . the policy in question concerns a failure to train . . . municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). "In order for a municipality's failure to train . . . to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. Plaintiff argues that in this instance,

11

policymakers knew that health inspectors would gain access to private areas of restaurants, that there was a history of hiring convicted criminals in the Health Department, and that the presence of criminals in restaurants was likely to lead to criminal and/or unconstitutional acts. Id. at 19.[4] However, Plaintiff has not adduced evidence that "the wrong choice by an employee will *frequently* cause deprivation of constitutional rights" (emphasis added), and as such Plaintiff's failure to train claim must fail. Carter, 181 F.3d at 357. Defendant City's motion is **GRANTED** as to this theory of municipal liability.

In addition to arguing that summary judgment should be granted as to Plaintiff's Section 1983 claims, Defendant City also argues that Plaintiff's conversion claim against the City is barred by the Tort Claims Act. Def. Mot. at 24-26. Plaintiff responds that because conversion is an intentional tort, it is not barred by the provisions of the Tort Claims Act cited by Defendant. Pl. Resp. at 23-25. Instead, Plaintiff argues that under Section 8550 of the Tort Claims Act the immunity provisions do not apply. Id. In its Reply, Defendant does not address this argument. See generally Def. Reply. Section 8550 of the Tort Claims Act applies specifically to Official Immunity, which otherwise provides that an employee of a local agency is liable for civil damages only to the same extent as his employing agency. 42 Pa. C.S.A. § 8545. For acts of "crime . . . or willful misconduct" that cause an injury, this "Official Immunity" section is waived. 42 Pa. C.S.A. § 8550. The provision cited by Plaintiff thus relates only to the liability and immunity that might attach to Clarence Morris, and not to the City itself. Because the alleged conversion does not appear to fall within any of the enumerated exceptions to

---

[4] Plaintiffs argument appears to be an amalgam of her claim based on the failure to train Health Inspectors and her claim based on failure to train Human Resource Associates.

Governmental Immunity detailed in 42 Pa. C.S.A. § 8542, Defendant's Motion for Summary Judgment on Plaintiff's conversion claim against the Defendant City is **GRANTED**.

    An accompanying Order follows.